# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BINH LY, | ) |
| | ) |
|       Petitioner, | ) |
| | )   CIVIL ACTION |
| v. | )   No. 07-3259-CM |
| | ) |
| STATE OF KANSAS, et al., | ) |
| | ) |
|       Respondents. | ) |
| | ) |

## MEMORANDUM AND ORDER

Petitioner Binh Ly, a prisoner at the Lansing Correctional Facility in Lansing, Kansas, files this Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person in State Custody (Doc. 1). Petitioner was convicted by a jury of felony murder and aggravated burglary, and is serving a controlling sentence of life imprisonment. His convictions were affirmed on appeal by the Kansas Supreme Court in *State v. Ly*, 85 P.3d 1200 (Kan. 2004), *cert. denied*, 541 U.S. 1090 (2004). His petition pursuant to Kan. Stat. Ann. § 60-1507 was denied without a hearing, and the denial was affirmed by the Kansas Court of Appeals. *See Ly v. State*, No. 94,732, 2006 WL 3231373 (Kan. Ct. App. Nov. 3, 2006), *rev. denied* (Kan. Feb 14, 2007). This habeas petition followed. Petitioner requests federal relief on a number of grounds. For the following reasons, the petition is denied.

**I.**     **Procedural Background**[1]

On May 31, 2001, petitioner was charged in the District Court of Sedgwick County, Kansas with one count of first-degree murder in violation of Kan. Stat. Ann. § 21-3401. The State later added an alternative charge of aggravated burglary in violation of Kan. Stat. Ann. § 21-3716 and

---

[1] This procedural background is drawn largely from the State of Kansas's Answer and Return, with which petitioner agrees.

felony murder in violation of Kan. Stat. Ann. § 21-3401(b). On September 13, 2001, petitioner was convicted by a jury of aggravated burglary and felony murder. He was sentenced to a controlling term of life imprisonment plus forty-nine (49) months in the Kansas Department of Corrections. On direct appeal, petitioner's convictions were affirmed by the Kansas Supreme Court.[2] *State v. Ly*, 85 P.3d 1200 (2004), *cert. denied* 541 U.S. 1090 (2004).

On November 5, 2004, petitioner filed for state post-conviction relief pursuant to Kan. Stat. Ann. § 60-1507.[3] The Sedgwick County District Court denied his petition without a hearing, and the denial was affirmed by the Kansas Court of Appeals.[4] *See Ly v. State*, No. 94,732, 2006 WL 3231373 (Kan. Ct. App. Nov. 3, 2006), *rev. denied* Feb 14, 2007.

In this federal habeas petition, petitioner raises the following claims, all of which were presented to the state courts either on direct appeal or through petitioner's motion for post-conviction relief:

---

[2] On direct appeal, petitioner raised the following three claims: (1) the trial court committed reversible error when it denied petitioner's motion for continuance; (2) prosecutorial misconduct in closing argument required reversal of the convictions; and (3) evidence was insufficient to support the convictions of felony murder and aggravated burglary.

[3] *Ly v. State*, Sedgwick County District Court Case No. 04 CV 4450. In his motion pursuant to Kan. Stat. Ann. § 60-1507, petitioner raised the following grounds for relief: (1) The trial court's instructions to the jury were fatally and fundamentally defective on aiding and abetting; (2) trial and appellate counsel were ineffective for their failure to raise the constructive amendment of the fatally defective jury instructions; (3) newly discovered evidence tends to completely exonerate petitioner of all charges; (4) the conviction for felony murder cannot stand because of the merger doctrine; (5) counsel was ineffective in his closing arguments to the jury by conceding the guilt of his client; (6) trial counsel was ineffective because he "tricked and [cajoled]" petitioner into giving up his right to remain silent; (7) trial counsel was ineffective for failing to investigate or seek a continuance prior to trial on scientific evidence (regarding firearms); (8) trial counsel was ineffective for allowing a close friend and associate of the prosecutor's family to remain seated on the jury; (9) trial counsel was ineffective in failing to object to the judge's answer to a question asked by the jury; (10) trial counsel was ineffective for the failure to object to Instruction No. 14 (aiding and abetting); and (11) counsel was ineffective for failure to object to the trial court's constructively amending the information by instructing the jury on an aggravated burglary charge not set out in the information.

[4] On post-conviction appeal, petitioner raised the following grounds: (1) the district court erred regarding petitioner's claim of new evidence by making incorrect legal and factual findings; and (2) the district court erred in finding trial counsel effective based on erroneous findings of fact and conclusions of law.

2

(1) The trial court committed reversible error in denying petitioner's pretrial motion for continuance;

(2) Prosecutorial misconduct in closing argument requires reversal of petitioner's conviction;

(3) The evidence was insufficient to support petitioner's conviction of felony murder and aggravated burglary;

(4) The district court erred in ruling on petitioner's newly discovered evidence claim;

(5) The aiding and abetting instruction was fatally defective;

(6) Trial counsel was ineffective for failing to conduct independent firearm testing or otherwise challenge the State's firearm expert;

(7) Trial counsel was ineffective for allowing a friend of the prosecutor's family to remain on the jury;

(8) Trial counsel was ineffective because he "tricked and c[a]joled" petitioner into making statements to law enforcement;

(9) Trial and appellate counsel were ineffective in failing to object to or challenge the trial court's response to the jury's question during deliberations;

(10) Trial counsel was ineffective in his closing argument to the jury by conceding petitioner's guilt; and

(11) The trial court erred in finding petitioner's trial and/or appellate counsel effective, and in failing to conduct an evidentiary hearing related to issues number (6), (7), (8), and (9).

**II.  Factual Background**

In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28

U.S.C. § 2254(e)(1). Petitioner does not challenge the factual background set out by the state court.[5]

Accordingly, the court incorporates the Kansas Supreme Court's version of the facts:

> On May 24, 2001, 20-year-old Chanh Chantivong and his younger twin brothers, Chin and Done, were at Woody Sim's house for haircuts. Several other young men, who were suspected to be members of the East Side Crips gang, were also at Sim's house. Because Sim's house had formerly been a duplex, his bedroom had an exterior door leading onto the front porch. The young men were hanging out in Sim's bedroom and on the front porch.
> During the evening, the young men had a conflict with a rival gang member who had fired shots at Sim's house. Afterwards, Chanh sent Done home to get Chanh's gun. When Done returned, the group of young men at Sim's house sat on the deck and discussed the earlier shooting incident. They kept all of the lights off because the police were patrolling the area and they did not want to attract attention. At about midnight, Done saw two cars following each other down the street. The two cars parked near Sim's house. A group of people ran from the cars, kicked in the door to Sim's bedroom, and turned on the lights. Some of the young men ran from the deck to the backyard, but Chanh ran into the house with his gun. A round of gunshots followed, and the group ran back to their cars and drove away. Witnesses estimated that the shooting lasted about 1 minute, but when it was over, Chanh lay dead on the floor. He had been shot 16 times and stabbed once.
> Police found 26 cartridge casings in Sim's bedroom from four different caliber weapons. The ballistics report from the State's expert indicated that Chanh's attackers used five different guns, but the only gun police recovered from the scene was Chanh's.
> Ly became a suspect in Chanh's murder when Salina police responded to a statewide alert for anyone reporting to a hospital with gunshot wounds. Ly sought treatment at the Salina Hospital for two gunshot wounds. A hospital employee notified the Salina police, who questioned Ly and his companions about Ly's injuries. Both Ly and his companions told the Salina police that Ly had been shot while he was urinating near the highway in Salina. However, a firearms expert analyzed the bullet removed from one of Ly's wounds and determined that it had been fired from Chanh's gun. After his arrest, Ly admitted

---

[5] Petitioner's statement of factual history merely adopts "the facts as layed [sic] out in his direct appeal brief." That brief is included in the record and, although it is incomplete, contains a recitation of evidence that is not inconsistent with the facts set out in the Kansas Supreme Court's opinion.

4

> to being present at the shooting but told police that he did not have a weapon. Ly gave the police the names of three individuals who were armed.
>
> The State charged Ly with one count of aggravated burglary and one count of first-degree murder under alternative theories of premeditated murder and felony murder. The case was originally set for trial on August 13, 2001, but the State received a continuance, over Ly's objection, until September 10, 2001, to get the ballistics report completed. On September 5, 2001, the State orally advised Ly's counsel of the results from the ballistics report. The next day, Ly's counsel orally moved for a continuance to get a ballistics report from an independent firearms expert. The court denied Ly's request.
>
> At trial, Ly claimed ignorance as a defense. He told police that he thought he was going to a party and that no one had talked about any shooting. Disbelieving Ly's claim of ignorance, the jury found him guilty of felony murder and aggravated burglary.

*Ly*, 85 P.3d at 1203.

Petitioner now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

### III. Standard of Review

Because petitioner has satisfied the exhaustion requirement the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(b)(1)(A), (c), the court reviews petitioner's claims pursuant to the provisions of the Act. *Wallace v. Ward,* 191 F.3d 1235, 1240 (10th Cir. 1999). The Act permits a court to grant a writ of habeas corpus only if one of two circumstances is present: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Absent clear and convincing evidence to the contrary, the court presumes that state court factual findings are correct. *Id.* § 2254(e)(1).

5

Under the first alternative, the court will find that a state court decision is contrary to clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413 (2000).

Under the second alternative, the court will find that a state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The key inquiry is whether the state court's application of the law was objectively unreasonable. *Id.* at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (observing that the "objectively unreasonable" standard of review is more deferential than the "clear error" standard). But the petitioner need not show that "all reasonable jurists" would disagree with the decision of the state court. *Williams*, 529 U.S. at 409–10.

## IV.    Discussion

Under the standard set out above, the scope of this court's review is to determine whether, as to each of petitioner's claims, the Kansas courts either (1) arrived at a conclusion contrary to clearly established federal law; or (2) applied the law in an objectively unreasonable manner. In doing so, this court presumes the correctness of the state court's factual findings, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). However, the court does not correct errors of state law, and is bound by a state court's interpretation of its own law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

**Trial Court's Denial of Motion for Continuance**

6

Noting that the trial court has discretion to grant or deny continuances pursuant to Kan. Stat. Ann. § 22-3401, the Kansas Supreme Court looked at "the opportunities Ly had to dispute the evidence both before and after trial" and petitioner's failure to demonstrate any prejudice because the State's case was not based purely on the theory that petitioner shot the victim. *Ly*, 85 P.3d at 1204 (citing *State v. Snodgrass*, 843 P.2d 720, 728–29 (Kan. 1992);) *see also United States v. West*, 828 F.2d 1468, 1469–70 (10th Cir. 1987). The state court found no abuse of discretion in the denial of petitioner's request for a continuance to allow him time to locate a firearms expert. *Ly*, 85 P.3d at 1204. This conclusion was based on state law, and was consistent with precedent. Additionally, the state court's standard is consistent with that applied in the federal courts. *See United States v. Riviera*, 900 F.2d 1462, 1475 (10th Cir. 1990).

The state court did not address whether petitioner's constitutional rights were violated by the trial court's denial of the motion for continuance and the motion to dismiss. To warrant federal habeas relief, the denial of a continuance must be so arbitrary and fundamentally unfair as to constitute a violation of due process. *Case v. Mondragon*, 887 F.2d 1388, 1396–97 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990); *Scott v. Roberts*, 777 F. Supp. 897, 899 (D. Kan. 1991). There are no mechanical tests to be applied in determining whether the denial of a continuance is so arbitrary as to violate due process. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In making such a fundamental fairness evaluation, the court must focus on the need for the continuance and actual prejudice resulting from its denial. *Case*, 887 F.2d at 1397. Construing the petition liberally, the court discerns allegations that the failure to grant a continuance violated petitioner's right to assistance of counsel, due process, and a fair trial. However, petitioner fails to establish how he was

prejudiced by not having an expert to rebut the report of the state's expert. On the record presented, petitioner fails to establish actual prejudice.

**Prosecutorial Misconduct in Closing**

In reviewing a prosecutorial misconduct claim, the Kansas courts apply a two-step inquiry: First, the court considers whether the challenged remarks were outside the considerable latitude allowed to the prosecutor in discussing the evidence. If so, then the court determines whether the remarks constituted plain error, that is, whether "the prosecutor's remarks are so gross and flagrant as to prejudice the jury against the defendant and deny the defendant a fair trial, requiring reversal." *Id.*, at 1206 (citing *State v. McCorkendale*, 979 P.2d 1239, 1250 (Kan. 1999), *overruled on other grounds by State v. King*, 204 P.3d 585 (Kan. 2009)).

As for petitioner's challenge to the prosecutor's statement that five people entered Sim's room, the court found that the statement was supported by the evidence and that petitioner's failure to object to it rendered review unnecessary.

However, the court found that the prosecutor misstated the evidence in closing by stating that Sovong Vann, a material witness in the case, "'saw one of the people, and they had on a yellow shirt and that that person with the yellow shirt had a gun. [Vann] says all of them had guns.'" *Id.* at 1206. Vann had not made any statements to indicate that all of the intruders had guns. Petitioner claimed that the error required reversal because without it, the prosecutor could not establish that petitioner had a weapon.

Applying the plain error standard, however, the court found that (1) the prosecutor's statement had no significance to the State's case because Vann had testified that the yellow-shirted intruder had a gun, and petitioner admitted to having worn a yellow shirt; and (2) the statement was

8

unnecessary under the aiding and abetting theory.  Therefore, the error, when viewed in light of the whole record, would not have changed the verdict or the result of the trial.

This court concludes that petitioner is not entitled to relief on his argument that prosecutorial misconduct requires reversal of his conviction.  *See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (employing identical standard for review of prosecutorial misconduct claims, requiring reversal only if misconduct is so egregious that it renders the entire trial fundamentally unfair.).  The Kansas Supreme Court's conclusion is not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

**Insufficient Evidence**

In evaluating petitioner's insufficient evidence argument on direct appeal, the Kansas Supreme Court looked to whether, after review of all the evidence, viewed in a light most favorable to the prosecution, a rational factfinder could have found petitioner guilty beyond a reasonable doubt.  *Ly*, 85 P.3d at 1207 (citing *State v. Beach*, 67 P.3d 121, 127–28 (Kan. 2003)).  The court first rejected petitioner's argument that his mere presence at the scene was insufficient to establish his guilt on an aiding and abetting theory.  The evidence, viewed in the light most favorable to the prosecution, established that petitioner was not merely along for the ride.  Petitioner was shot twice by the victim, and the wounds indicated petitioner was facing the victim when petitioner was shot.  Second, a witness described a man in a yellow shirt with a gun.  Petitioner admitted that he was wearing a yellow shirt at the time of the shooting, making it reasonable to infer that he was armed.  Third, evidence of the circumstances surrounding the timing of the shooting, the conditions of the premises, and involvement of various parties tended to discredit petitioner's version of events.  From this evidence, the state court found that the jury could have inferred that the group of shooters

9

coordinated their events prior to arriving at Sim's house, and that petitioner encouraged and participated in the incident. Other than petitioner's own self-serving statements, there was no evidence tending to support his version of the events. Considering this under the applicable standard, the court concluded that there was sufficient evidence to support the verdict. This conclusion is not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

**Newly Discovered Evidence**

In petitioner's application for post-conviction relief, he claims that, after his trial, he came in contact with a codefendant, Sashada Makthepharak, and obtained an affidavit from him stating that petitioner did not have anything to do with the murder. Specifically, Makthepharak's affidavit states that Makthepharak told the prosecutor that "Binh Ly had nothing to do with the crime [and] did not know what was going on"; that the prosecutor "chose to ignore" the information and stated that was "too bad for [petitioner.]" (Doc. 1, at 15.)

The Sedgwick County District Court denied relief and the Kansas Court of Appeals affirmed. The appellate court noted that new trials on the ground of newly discovered evidence are "not favored and are viewed with great caution. The defendant bears the burden of establishing that the newly proffered evidence is indeed 'new'; that is, it could not, with reasonable diligence, have been produced at trial; and then the evidence must be of such a materiality that there is a reasonable probability that it would have produced a different result at trial." *Ly*, 2006 WL 3231373, at *1 (citing *State v. Moncla*, 4 P.3d 618 (Kan. 2000)). The court determined that the record "clearly show[ed] that [petitioner] knew [Makthepharak] was a codefendant," and that petitioner "could have discovered the information prior to trial." *Id*. at *2.

10

Before this court, petitioner suggests that, "[i]f [Makthepharak] specifically told [the prosecutor] that petitioner was not involved in the incident and that he had no prior knowledge of what was going on and the prosecutor failed to share that information with petitioner," the petitioner is entitled to relief under *Brady v. Maryland*, 373 US 83, 87 (1963). The state court did not address petitioner's *Brady* argument, although it was briefed.

In a *Brady* claim, the petitioner bears the burden of showing that the prosecution suppressed material evidence favorable to the petitioner. *Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008); *Moore v. Gibson*, 195 F.3d 1152, 1164 (10th Cir. 1999). In order for the evidence to be material, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. at 1165 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)) (internal quotation marks omitted).

After careful review of the record and briefs, this court finds that petitioner fails to meet his burden. The jury rejected petitioner's claim of innocence based on ignorance. Petitioner fails to show that there is a reasonable probability that, had the prosecutor informed petitioner that Makthepharak would also attest to his ignorance, Makthepharak would have so testified, and the jury would have reached a different outcome. Indeed, the petitioner does not allege that Makthepharak in fact made this statement to the prosecutor prior to petitioner's trial. He argues that, "*[i]f* [Makthepharak] specifically told [the prosecutor] that petitioner was not involved . . . and the prosecutor failed to share that information with petitioner," then there would be a *Brady* problem. (Doc. 9, at 12) (emphasis added). Moreover, it appears that petitioner would be in the best position to know what his codefendant might say concerning his guilt or innocence, and would be entirely

capable of investigating that. Such a burden should not fall to the prosecution. Petitioner's arguments are insufficient to entitle him to relief.

**Aiding and Abetting Instruction**

The state appellate courts did not evaluate petitioner's claim that the aiding and abetting instruction was erroneous. However, this claim was raised in petitioner's state post-conviction petition and was addressed by the Sedgwick County District Court. That court concluded the claim was barred because, as a mere trial error, it could have been raised in his direct appeal. (Sedgwick County District Court, Order Denying Relief Pursuant to K.S.A. 60-1507, filed stamped June 29, 2005, at 2–3) (citing Kan. Sup. Ct. R. 183(c)(3)). Regardless, the court held the instruction mirrored Kansas Pattern Instruction P.I.K. Crim. 3d § 56.02. *Id*. (citing *State v. Butler*, 897 P.2d 1007 (Kan. 1995)). The court therefore finds that the claim is procedurally defaulted under the independent and adequate state ground doctrine. Petitioner fails to demonstrate cause for the default and actual prejudice, or that a fundamental miscarriage of justice will occur if the court does not consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**Ineffective Assistance of Counsel**

Petitioner raised a number of claims regarding the effectiveness of his trial and appellate counsel. Specifically, he argued that his counsel was ineffective for (1) failing to conduct independent firearm testing or challenge the State's firearm expert; (2) allowing a juror who had a special relationship with the prosecutor to remain on the jury; (3) tricking him into giving up his right to remain silent; (4) failing to object to or challenge the trial court's response to a question from the jury during its deliberations; and (5) conceding petitioner's guilt in closing. Respondent

12

argues that these claims are not supported by the record, do not entitle petitioner to relief, or are not properly before the court.

In evaluating petitioner's claims that his counsel provided ineffective assistance, the appropriate standard is that identified in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland,* a petitioner bears the burden of satisfying a two-pronged test. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

There is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the petitioner makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Strickland,* 466 U.S. at 697.

To the extent the Kansas Court of Appeals addressed the merits of petitioner's arguments in its November 3, 2006 Memorandum Opinion, this court confines its review to whether the appellate court unreasonably applied *Strickland* or whether its factual determination was unreasonable in light of the evidence presented. In its opinion, the Kansas Court of Appeals set forth the *Strickland*

13

standard cited above, identified petitioner's allegations of ineffective assistance of counsel, and rejected petitioner's claims.

### Independent Firearm Testing or Challenging State's Expert

As to his claim that counsel was ineffective for failing to conduct independent firearm testing or challenge the State's firearm expert, the court noted that counsel had sought a continuance—it was the trial court that denied the motion. The appellate court's review of the record led it to agree with the district court that no amount of expert testimony from a defense ballistics expert would refute the State's aiding and abetting theory of the case. The court found that petitioner's theory of defense was not harmed by the State's expert's testimony, because the State never sought to put the murder weapon in petitioner's hand. *Ly*, 2006 WL 3231373 at *3–4. The court's conclusion is not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

### Juror's Relationship to Prosecutor

The court also considered petitioner's claim that his counsel was ineffective for allowing a juror to remain on the jury after the juror indicated that he knew the prosecutor's brother, although not the prosecutor. Petitioner faulted his counsel for failing to ask more questions on voir dire regarding impartiality, and argued that an evidentiary hearing was necessary. The court rejected these arguments, stating, "[w]e do not know what else trial counsel could have asked, other than to repeat the same question" the prosecutor asked. *Id*. at *3. The Court of Appeals noted that, "[w]here the prosecutor asked the necessary questions regarding potential bias, defense counsel's failure to repeat them does not constitute ineffective assistance." *Id*. at *3. The court's conclusion is

14

not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

### Statements to Law Enforcement

As to his claim that counsel tricked him into making statements to law enforcement, that his statements were not voluntary, and that an evidentiary hearing was required in order for the district court to deny relief, the court determined that none of the information provided by petitioner to police was damaging. Moreover, the court noted that all of the information came into evidence through the testimony of other witnesses. And finally, petitioner's counsel had attempted to use petitioner's cooperation with authorities to cast him in a positive light to the jury. *See id*. at *2. The court's conclusion is not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

### Response to Jury Questions

The court also addressed petitioner's claim that his counsel was ineffective for failing to object or challenge the trial court's response to a question from the jury during its deliberations. According to the Court of Appeals, the jury sent several questions to the trial court during its deliberations. The first asked for a definition of "intentionally," which the court's response provided. The second question, after clarification, asked "[d]o we have to select felony murder if we select [second]-degree murder and aggravated burglary?" The trial court responded by asking the jurors to carefully read the instructions. Petitioner's counsel agreed that the instructions held the answer to the jury's question. The Court of Appeals rejected petitioner's claim that this constituted ineffective assistance, or that his appellate counsel was ineffective for raising it on direct appeal. The court found that the trial court's responses were a correct recitation of the law, and that

15

petitioner was unable to establish prejudice. The instructions told the jury that it must decide each charge independently of the others, and that petitioner may be convicted or acquitted on any or all of the charges. The court's conclusion is not contrary to clearly established federal law, nor was it applied in an objectively unreasonable manner.

### Conceding Petitioner's Guilt in Closing Argument

The state appellate courts did not evaluate petitioner's claim that his counsel was ineffective for conceding petitioner's guilt in closing. However, this claim was raised in petitioner's state post-conviction petition and was addressed by the Sedgwick County District Court. That court rejected the claim, finding that, "when the closing argument is viewed in its entirety, it is evident trial counsel did not ask the jury to convict." (Sedgwick County District Court, Order Denying Relief Pursuant to K.S.A. 60-1507, filed stamped June 29, 2005, at 5.) The denial of petitioner's ineffective assistance argument was proper because petitioner failed to show that counsel's performance was deficient.

Petitioner is entitled to a fair trial, not a perfect one. *See Ross v. Oklahoma*, 487 U.S. 81, 91 (1988); *State v. Crawford*, 872 P.2d 293, 298 (Kan. 1994). And this court's review in the context of a habeas petition is limited. *See Turrentine v. Mullin*, 390 F.3d 1181, 1201 (10th Cir. 2004). Based on this court's review of the record, which includes briefs in this court as well as in the state appellate courts; the transcripts of the trial and motions hearings; and the orders and opinions of the Kansas courts, petitioner received a fair trial. For all the reasons set out above, petitioner is not entitled to habeas relief.

16

**IT IS THEREFORE ORDERED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person in State Custody (Doc. 1) is denied.

Dated this 2nd day of December, 2009, at Kansas City, Kansas

                                      **s/ Carlos Murguia**
                                      **CARLOS MURGUIA**
                                      **United States District Judge**